**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER ATIQ and HUMZA ATIQ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 24 C 10344 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| WSH PACKAGING SYSTEMS, LTD., | ) | |
| an Illinois Corporation, d/b/a | ) | |
| GLOBAL INTERMODAL TRANSPORT, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

After Defendant WSH Packaging Systems, LTD., doing business as Global Intermodal Transport ("Global"), terminated Plaintiffs Jennifer and Humza Atiq's (together, the "Atiqs") employment, the Atiqs filed the instant lawsuit. In response, Global asserted counterclaims for violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*; violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; and tortious interference with business relationships. Now, the Atiqs move to dismiss Global's CFAA and tortious interference with business relationships claims under Federal Rule of Civil Procedure 12(b)(6). Because Global has alleged facts sufficient to state its CFAA claim, but it has not adequately pleaded tortious interference with business relationships, the Court grants in part and denies in part the Atiqs' motion to dismiss [22].

## BACKGROUND[1]

Global hired Jennifer Atiq in November 2018 and Humza Atiq in April 2021. On January 19, 2024, Global terminated the Atiqs' employment. The next day, on January 20, 2024,

---

[1] The Court takes the facts from Global's counterclaims and presumes them to be true for the purpose of resolving the Atiqs' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

the Atiqs accessed Global's computer system, and deleted passwords and digital accounts. They also "killed" Global's Google Documents account and deleted certain drivers from Global's account. Doc. 17 at 21. The Atiqs acted without Global's knowledge or permission, as the systems were password protected and Global did not authorize anyone who was no longer employed by Global to access their computer network, Google Drives, or customer portals. Due to the Atiqs' actions, Global could not operate for several days and suffered losses greater than $5,000.

Among other actions the Atiqs took on Global's computer systems, the Atiqs digitally deleted certain links that Global used to share data with its customers, including one particular customer named Flexport. After the Atiqs' actions, Global's President learned from Flexport that certain information Global shared with Flexport had disappeared. Before the Atiqs deleted the data, Global expected to continue doing business with Flexport and other customers. However, the Atiqs' actions interfered with Global's relationship with Flexport and other customers and slowed the development of some customer relationships. The Atiqs knew that Global had ongoing business relationships with the customers whose information they deleted, and they intended to interrupt or destroy Global's relationships with those customers.

On January 22, 2024, Global sent the Atiqs a cease-and-desist letter and requested the Atiqs' cooperation in restoring Global's digital accounts. The Atiqs did not assist Global in restoring its digital accounts.

## LEGAL STANDARD

The legal standard for a motion to dismiss a counterclaim is the same as the standard applied to a motion to dismiss a complaint. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). A motion to dismiss under Rule 12(b)(6) challenges the

sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the counterclaim must assert a facially plausible claim and provide fair notice to the counterdefendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. CFAA

The Atiqs argue that Global did not adequately plead its CFAA claim because it did not provide the Atiqs with notice of the subsection of the CFAA that the Atiqs allegedly violated. In its response, Global has clarified that it claims that the Atiqs violated § 1030(a)(2) of the CFAA, and contends that it has alleged adequate facts to state this claim.

"Plaintiffs need only plead facts, not legal theories, in their complaints." *Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014). Along these lines, to provide a defendant with adequate "fair notice" in their complaint, a plaintiff must only plead facts that (1) "describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and (2) "plausibly suggests that they have a right to relief, raising the possibility above a speculative level." *Lugg v. Sutton*, 368 F. Supp. 3d 1257, 1260 (C.D. Ill. 2019) (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)

(internal quotation marks omitted)).  Courts do not require plaintiffs to plead express legal theories in their complaints.  *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).  In fact, plaintiffs can even cite the wrong statute in their complaint, so long as they correct that error before summary judgement and the delay in correction does not harm the defendant.  *Id.*

Here, Global did not need to expressly state in its counterclaim which subsection of the CFAA it alleges that the Atiqs violated because Global pleaded adequate facts to state a § 1030(a)(2) claim.  The CFAA is "primarily a criminal anti-hacking statute," but it also creates a private right of action under § 1030(g), which allows a person suffering damage or loss from CFAA violations to bring a civil action for money damages or equitable relief.  *Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016); 18 U.S.C. § 1030(g).  "A person suing under section 1030(g) must prove: (1) damage or loss (2) by reason of (3) a violation of some other provision of § 1030, and (4) conduct involving one of the factors set forth in section" § 1030(c)(4)(A)(I)-(V).  *Inmar, Inc. v. Vargas*, No. 18 C 2306, 2018 WL 6716701, at *9 (N.D. Ill. Dec. 21, 2018) (quoting *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009)).

The Court first turns to the third element of § 1030(g), whether Global alleged a violation of a provision of § 1030, as it is the core dispute in this case.  Global clarified in its response to the Atiqs' motion to dismiss that it alleges that the Atiqs violated § 1030(a)(2).  The Court accepts this clarification and uses it to guide its analysis.[2]  The elements of a § 1030(a)(2) claim

---

[2] Because plaintiffs do not need to identify their specific legal theory in their complaint, courts may accept a party's clarification of which subsection forms the basis of their claim if they raise it in their response to the motion to dismiss.  *See, e.g.*, *Napier v. Bruce*, No. 02 C 8319, 2004 WL 1194747, at *4 (N.D. Ill. May 27, 2004) (accepting a plaintiff's clarification of which subsection formed the basis of his RICO claim when the plaintiff included that clarification in their response to the motion to dismiss, and using that subsection as the basis of the court's analysis); *Ali v. Calumet Med. Ctr., Inc.*, No. 13 C 766, 2013 WL 5349100, at *5 (E.D. Wis. Sept. 23, 2013) ("Although Plaintiff's complaint does not identify which subsection cited above he believes Defendants have breached, Plaintiff's response brief clarifies that he asserts a claim under 995.50(2)(a).").

are "(1) intentional access of a computer (2) without or in excess of authorization (3) whereby the defendant obtains information from the protected computer." *Motorola, Inc.*, 609 F. Supp. 2d at 766. According to the statute, the term "computer" includes "electronic magnetic, optical, electrochemical, and other high speed data processing devices performing logical arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such devices." *ACW Flex Pack LLC v. Wrobel*, No. 22-cv-6858, 2023 WL 4762596, at *6 (N.D. Ill. July 26, 2023). Regarding the first element, Global alleges that the Atiqs accessed Global's computer networks on January 20, 2024. The Atiqs argue that because § 1030(a)(2) does not mention computer networks, only protected computers, the facts Global alleges do not suffice. However, the CFAA's definition of computer is expansive and the computer system, Google Drives, and customer portals that the Atiqs allegedly accessed fit within this definition, as they are forms of data storage or communications facilities that operate in conjunction with physical data processing devices. *See ACW Flex Pack LLC*, 2023 WL 4762596, at *6–7 (explaining that cloud based systems and servers are computers under the CFAA because such systems process and retain data); *see also United States v. Shamsud-Din*, 580 F. App'x 468, 472 (7th Cir. 2014) (stating that the CFAA "gives 'computer' what the district court rightfully called a 'very, very broad' definition" and that definition could include a cell phone); *Hill v. Lynn*, No. 17 C 06318, 2018 WL 2933636, at *3 (N.D. Ill. June 12, 2018) ("Consistent with the plain language of the statute, most courts hold that unauthorized access to web-based accounts can form the basis of a CFAA violation, even if the defendant had permission to use the physical computer in question.").

Global has also pleaded sufficient facts to state the second and third elements of a § 1030(a)(2) violation. Global expressly alleges that it did not authorize the Atiqs to access its

computer systems, Google Drives, or customer or vendor portals after their termination, which supports that the Atiqs acted without authorization. Additionally, Global alleges that the Atiqs changed passwords, destroyed files, and eliminated digital files, which supports that they obtained information from the protected computer, as the Court can reasonably infer that some information is required in order to take those actions.

Next, the Court turns to whether Global has alleged damage or loss for purposes of § 1030(g). Global need only allege damage or loss, not both. *Motorola, Inc.*, 609 F. Supp. 2d at 766. The CFAA defines damage as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* (quoting 18 U.S.C. § 1030(e)(8)). Merely copying or printing files is not enough to constitute damage for purposes of the CFAA, rather there must be "destruction or impairment to the integrity of the underlying data." *Mintel Int'l Grp., Ltd. v. Neergheen*, No. 08-cv-3939, 2010 WL 145786, at *9 (N.D. Ill. Jan. 12, 2010). Global alleges that the Atiqs destroyed files, changed passwords, and eliminated digital portals, which constitutes damage for purposes of § 1030(g) because it involved the destruction or impairment of the data. *See id.* (explaining that erasing files or compromising the integrity of data in a computer network is the type of damage contemplated by the CFAA).

Global has also sufficiently alleged the second element of § 1030(g), which requires that the damage or loss be "by reason of" the defendant's violative conduct, through its allegations that their loss of data directly resulted from the Atiqs' alleged conduct in accessing the computer networks. *See* 18 U.S.C. § 1030(g). Lastly, the only factor set forth in § 1030(c)(4)(A)(i)(I)-(V) that could apply to this case is "(I) loss to 1 or more persons during any 1-year period aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). Global has alleged that the Atiqs' conduct associated with their unauthorized access of Global's computer systems,

including their digital vandalism, caused Global a loss in excess of $5,000, which satisfies this

element.  Thus, in sum, Global has pleaded facts sufficient to allege that the Atiqs violated

§ 1030(a)(2) of the CFAA and that the violation is actionable under § 1030(g).

## II.     Tortious Interference with Business Relationships

Next, the Atiqs argue that the Court should dismiss Global's tortious interference with

business relationships claim because there is no such tort under Illinois law and because Global

does not state any harm or damages in its counterclaim.  Global counters that this tort does in

fact exist in Illinois based on prior case law and defends its allegation of damages.

Global first contends that Illinois law explicitly recognizes the tort of tortious interference

with business relations.  Global cites to *Orgler Homes, Inc. v. Chicago Regional Council of

Carpenters*, No. 06 C 50097, 2007 WL 10025573, at *2 (N.D. Ill. May 11, 2007), and *DSC

Logistics, Inc. v. Innovative Movements, Inc.*, No. 03 C 4050, 2004 WL 421977, at *2 (N.D. Ill.

Feb. 17, 2004), which both reference this specific tort claim.  However, the Atiqs claim that the

Court should not give these unpublished opinions significant weight.

The Court finds it unnecessary to rely on unpublished Illinois authority as a number of

published cases in Illinois reference tortious interference with business relationships.  *See, e.g.*,

*Sullivan's Wholesale Drug v. Faryl's*, 214 Ill. App. 3d 1073, 1080 (1991) ("To establish a cause

of action for tortious interference with a business relationship, a plaintiff must plead and prove

the existence of a valid business relationship or expectancy, the defendant's knowledge of that

relationship or expectancy, international interference by the defendant which induced or caused

the breach or termination of the relationship or expectancy, and resulting damage."); *Schott v.

Glover*, 109 Ill. App. 3d 230, 235 (1982) ("In order to state a cause of action for tortious

interference with a valid business relationship and expectancy a plaintiff must effectively plead a

7

reasonable expectancy of entering a valid business relationship and purposeful interference by defendant which defeats that expectancy thereby causing harm to the plaintiff.").  In addition to those Illinois courts that have expressly discussed tortious interference with business relationships, many Illinois courts have recognized highly similar torts of tortious interference with a business expectancy or tortious interference with prospective economic advantage.  *See, e.g.*, *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511 (1991) ("It is generally recognized by the Illinois courts, however, that to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference."); *Clarage v. Kuzma*, 342 Ill. App. 3d 573, 582 (2003) (stating largely the same elements for tortious interference with a business expectancy).

As discussed above, this Court looks to the facts of Global's pleading to ascertain whether it stated a plausible claim, not to the name of the express legal theory Global seeks to invoke.  *Hatmaker*, 619 F.3d at 743.  The Atiqs argue that Global's claim fails because it does not adequately allege damages.  Global asserts that it has adequately pleaded damages because it alleges that "[p]laintiffs' digital vandalism interfered with Global's legitimate expectation of doing business with many of Global's clients including Flexport and in some instances, this digital vandalism slowed the blossoming of Global's customer relationships."  Doc. 26 at 5.  In sum, the Atiqs criticize Global's pleading because Global did not plead that it lost any customer

or business deal as a result of the Atiqs' conduct. Global, however, argues that such allegations are not necessary.

The Court agrees with the Atiqs that Global has not sufficiently pleaded that the Atiqs' conduct "induced or caused the breach or termination of [any] relationship or expectancy, and resulting damage." *Sullivan's Wholesale Drug*, 214 Ill. App. 3d at 1080. More specifically, while Global pleads that the Atiqs' conduct slowed the development of some relationships and hurt its relationship with Flexport, Global does not allege that the Atiqs damaged its relationships with clients such that any client terminated their relationship with Global, or that any specific business expectancy did not come to fruition. In the absence of any such allegations, Global fails to state a claim for tortious interference with business relations and the Court must dismiss that claim. *See id.* (granting summary judgment where there was no evidence that the defendants induced or caused the severance of the business relationships in the case); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 862–64 (2008) (finding that a plaintiff had not shown damages on a tortious interference with business expectancy claim where, even when the plaintiff had a reasonable expectation of maintaining business relationships with certain customers, the customers returned to the plaintiff and plaintiff could

not show lost profits).  Because Global may be able to amend and replead an adequate claim with sufficient allegations, the Court dismisses Global's tortious interference claim without prejudice.

## CONCLUSION

The Court grants in part and denies in part the Atiqs' motion to dismiss [22].  The Court dismisses Global's tortious interference with business relationships claim without prejudice.

Dated: August 14, 2025

_____
SARA L. ELLIS
United States District Judge